# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00578-GCM

| | |
|---|---|
| MARGARET M. MANOS, PAUL MANOS, <br><br> Plaintiffs, <br><br> v. <br><br> FREEDOM MORTGAGE CORPORATION, <br><br> Defendant. | **ORDER** |

**THIS MATTER** comes before the Court upon Defendant Freedom Mortgage Corporation's Motion for Summary Judgment (ECF Doc. 28), which was filed on January 14, 2021. Plaintiffs Margaret Manos and Paul Manos filed their Response (ECF Doc. 30) on February 8, 2021, and Defendant filed its Reply (ECF Doc. 31) on February 12, 2021. Now being fully briefed, this matter is ripe for consideration, and the Court finds the following.

## I. STATEMENT OF FACTS

This case arises out of the servicing of Plaintiffs' home loan by Defendant Freedom Mortgage Corporation ("Freedom"). In Plaintiffs' refinancing note, they agreed to pay their mortgage on the first of each month and agreed to pay a late fee if their payment was not made within fifteen days of the due date. ECF Doc. 28-3 at 1–2. Plaintiffs received notice that late mortgage payments could be reported to consumer reporting agencies ("CRAs") when Freedom began servicing their loan in November 2017. ECF Doc. 28-4 at 1, 3. Freedom's welcome letter also listed various payment methods available. *Id.* at 2.

Plaintiffs set up an online payment account on Freedom's website to make monthly mortgage payments. ECF Doc 1, ¶ 27. To make a one-time payment online, which is one of the various options available to Plaintiffs, customers use their online Freedom account, enter their bank account number, routing number, payment amount, and the date on which Freedom is authorized to collect funds. ECF Doc. 28-6 at 7. When a customer selects the date, that is their agreement that Freedom is "allowed to pull those funds" on that specific date. *Id.*

Freedom does not process online payments received after 11:00 PM to allow its cash department to process payments received that day. ECF Doc. 28-5 at 2–3. When a payment is attempted after 11:00 PM on a given day, customers must "postdate their payment in order for that payment to be posted and received that day." *Id.* at 2. This is because there is not enough time for payments attempted after 11:00 PM to be processed that day and, therefore, the payment cannot be dated for that day or else Freedom would not have authority to pull funds from that customer's account the next day. *Id.* at 3. Freedom's web platform is designed to say that payments made after 11:00 PM are posted the next day and to also give an error message when a payment is made after 11:00 PM and not properly dated for the next day. *Id.*; ECF Doc. 28-6 at 2; ECF Doc. 30-3 at 54. The error message is a pop-up. ECF Doc. 30-2 at 16–17. Freedom does not require users to allow pop-ups on their browser. *Id.* When an error message is displayed, it is notated in Freedom's billing record. *Id.* at 14. The website does not provide instructions on how to post-date the payment in such instances. ECF Doc. 28-6 at 2.

In February 2018, Plaintiffs attempted to make a payment after 11:00 PM, the error message displayed, Plaintiffs change the date to the next day, and the payment was accepted. *Id.* at 8–9; ECF Doc. 28-7 at 4–5. A letter confirming Plaintiffs' February mortgage payment was mailed to Plaintiff, just as it had been for the other months since the mortgage had been transferred

to Freedom. ECF Doc. 28-8. On March 6, 2018, Plaintiffs again attempted to submit a one-time payment online after 11:00 PM and dated for March 6, 2018. ECF Doc. 1, ¶ 31; ECF Doc. 28-7 at 6. They received the standard error message, and the payment was not completed. ECF Doc. 28-7 at 6; 28-9 at 11–12.

On March 7, 2018, Plaintiffs logged into their online site, viewed the home page, and logged out. ECF Doc. 28-7 at 7. They logged in on March 16, 2018 as well. *Id.* On March 19, 2018, Freedom sent Plaintiffs a letter informing them that they had not made their March loan payment and that a late fee had been assessed. ECF Doc. 28-11. Freedom also sent Plaintiffs their March 19, 2018 mortgage statement, which showed that their March 2018 payment had not been made and charged a late fee. ECF Doc. 28-12. Plaintiffs do not dispute that they received these documents. ECF Doc. 28-13 at 9. Freedom also made seventeen attempts to call Plaintiffs before the payment became thirty days delinquent. ECF Doc. 28-14 at 1.

Freedom received the March 2018 payment on April 5, 2018. ECF Doc. 28-15 at 2, 6; ECF Doc. 1, ¶ 49. Freedom reported the late payment to the CRAs. ECF Doc. 28-16. On April 18, 2018, Ms. Manos called Freedom because Plaintiffs received a mistaken letter indicating they had not made their April payment. ECF Doc. 30-3 at 99, 101. During that call, Ms. Manos acknowledged she missed the March 2018 payment. *Id.* at 103.

On May 8, 2018, while in the market to purchase a home, Plaintiffs were notified by their mortgage broker that their credit reports displayed the thirty-day delinquent payment from March 2018. ECF Doc. 1, ¶¶ 59–63. Ms. Manos called Freedom that same day and admitted on the phone that she forgot to pay in March 2018. ECF Doc. 30-3 at 114. She also stated on the phone call that she thought she had paid within thirty days, but then acknowledged that the payment was made after April 1, 2018. *Id.* at 115. On the same phone call, Freedom explained to Ms. Manos

how she could dispute the credit reporting. *Id.* at 118. Ms. Manos also asked if Freedom could perform any sort of "courtesy . . . type of acceptance" since this was the first time such an occurrence had happened, "[i]t was truly a mistake," she "obviously . . . missed the date," and she "[did]n't think that's in dispute." *Id.* at 117.

Later on May 8, 2018, in a mortgage past-due dispute email, Plaintiffs asked Freedom to remove the negative report from each of the CRAs. ECF Doc. 28-19 at 1. In their dispute email, Plaintiffs acknowledged that they realized their thirty-day past-due status was "our mistake in not verifying the March payment had been properly submitted through the online payment system[.]" *Id.* The formal dispute email also referenced Plaintiffs' past payment history, which included no missed or late payments. *Id.* at 1–2. Freedom reviewed Plaintiffs' account records and the information provided by Plaintiffs and, on May 22, 2018, informed Plaintiffs that it could not update their credit report because the March 2018 delinquency was accurate as reported. ECF Doc. 28-20.

After Freedom would not change the credit report as Plaintiffs requested, Plaintiffs filed a dispute with the Consumer Financial Protection Bureau, claiming Freedom had inaccurately reported their March 2018 mortgage payment as thirty days past due. ECF Doc. 28-22. Freedom responded with a letter stating the payment attempted on March 6 was not accepted, that an "error message was triggered when the payment was submitted," a late charge notice was mailed on March 19, and seventeen phone call attempts were made without success between March 19 and March 30. ECF Doc. 28-23 at 1. Plaintiffs filed additional disputes with Equifax, Experian, and TransUnion. ECF Doc. 1, ¶ 93. Freedom investigated each dispute and confirmed the accuracy of its reporting. ECF Doc. 28-5 at 8–10. This means Freedom reviewed its system of record, including payment history, as well as servicing notes based upon the circumstances of the dispute,

recordings, web logs, and payment history. *Id.* Any additional facts are set forth in the discussion section below.

## II. STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and "the materiality determination rests on the substantive law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (alteration in original).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met the initial burden, the burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson*, 477 U.S. at 256. Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). In considering a motion for summary judgment, a Court views all evidence in the light most favorable to the nonmoving party. *Id.* at 255. It is with these standards in mind that the Court considers the present matter.

### III. DISCUSSION

Plaintiffs claim Freedom has violated the Fair Credit Reporting Act ("FCRA"), North Carolina's Debt Collection Act ("NCDCA"), and North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"). Freedom asserts it is entitled to summary judgment in all respects.

#### a. Fair Credit Reporting Act

Plaintiffs allege Freedom violated the FCRA by failing to conduct a reasonable investigation into the accuracy of Freedom's reporting as to Plaintiff's thirty-day delinquent March 2018 payment. Upon notice of a dispute, furnishers of information have specific responsibilities as to investigating and reporting the results of such investigations. *See* 15 U.S.C. § 1681s-2(b)(1) (2018); *Ross v. F.D.I.C.*, 625 F.3d 808, 813 (4th Cir. 2010). The furnisher of information must "conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). The reasonableness of an investigation "is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. A'ppx 246, 253 (4th Cir. 2017). Generally, the reasonableness of an investigation is a question of fact for the jury. *See Davis v. Trans Union, LLC*, 526 F. Supp. 2d 577, 585 n.3 (W.D.N.C. 2007). However, summary judgment can be granted if the reasonableness of the investigation is beyond question and a plaintiff has not adduced any evidence to the contrary. *See Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md. 2015).

Here, Freedom had notice of several disputes regarding its reporting of Plaintiffs' delinquent March 2018 payment. Freedom attests that, after each notice of dispute, it conducted

an investigation examining its system of record, including payment history, the servicing notes, recordings, web logs, when payments would have posted, when payments were received, what amounts were received, and what date payments were received. Because recordings are part of the investigation, this means that phone conversations with Plaintiffs were also reviewed. Plaintiffs' recurrent reiterations that Freedom published false information do not create a genuine dispute of material fact as to the reasonableness of Freedom's investigation. While Plaintiffs continue to assert that Freedom failed to conduct a reasonable investigation, they have failed to adduce any evidence showing the investigation was anything but reasonable.

The accuracy of Freedom's reports lends itself to the reasonableness of Freedom's investigation. Through conclusory assertions, Plaintiffs argue they made their payment on time. But the facts are straightforward and indisputable. Though Plaintiffs may have *attempted* to make their payment on time, they did not complete their payment. Plaintiffs have admitted several times they did not make their March payment within thirty days, Plaintiffs' bank statement shows that they did not make their March payment within thirty days, Freedom's records show that Plaintiffs did not make their March payment within thirty days, and Freedom's records show numerous attempts to inform Plaintiffs they did not make their March payment within thirty days. Freedom's report was not inaccurate, which supports not only that Freedom's investigation was reasonable but also that Freedom did not fail to satisfy its duty of updating incomplete or inaccurate information. Summary judgment should be granted as to Plaintiffs' FCRA claim.

### b. North Carolina's Debt Collection Act

Plaintiffs also allege that Freedom violated the NCDCA by charging a late fee after Plaintiffs failed to timely make their March 2018 payment. Under the NCDCA, "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means." N.C.

Gen. Stat. § 75-55 (2021). Debt collectors, as defined in the statute, are specifically prohibited from

> Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge. Nothing in this section shall be construed to prohibit the collection of filing fees, service of process fees, or other court costs actually incurred. The collection of such fees is not a violation of this Article or of Article 15 of Chapter 53 of the General Statutes.

*Id.* § 75-55(2).

Plaintiffs must first establish the three threshold requirements of an NCDCA claim, which is that (1) the obligation owed is a debt; (2) the obligation is owed by a consumer; and (3) the one trying to collect the debt is a debt collector. *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 682 (E.D.N.C. 2019). Freedom argues the NCDCA cannot apply because Freedom is not a "debt collector" under the statute. *See Brown v. Loancare, LLC*, No. 3:20-cv-00280-FDW-DSC, 2020 WL 7389407, at *2–3 (W.D.N.C. Dec. 16, 2020) (explaining numerous reasons why the NCDCA should not apply where a plaintiff was suing a mortgage loan servicer because she had to pay fees to make mortgage payments online). "Debt collector" is defined as "any person engaging, directly or indirectly, in debt collection from a consumer[.]" N.C. Gen. Stat. § 75-50(3). While Freedom argues that finding the NCDCA applies here would contradict *Brown*, the facts in *Brown* are distinguishable. Freedom cites no binding precedent establishing that the NCDCA is inapplicable, and the Court's independent research reveals no such precedent either.

Assuming without deciding that the NCDCA applies, the Court proceeds with the NCDCA analysis. Next, a plaintiff must establish the three generalized elements of a NCUDTPA claim. *See* N.C. Gen. Stat. § 75-56(a) ("The specific and general provisions of this Article shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area

of commerce regulated by this Article."); *Waddell*, 395 F. Supp. 3d at 685. Therefore, a plaintiff must show that there was (1) "an unfair or deceptive act"; (2) "in or affecting commerce"; and (3) "proximately causing injury." *Waddell*, 395 F. Supp. 3d at 682. "Whether an act or practice is unfair or deceptive is a question of law for the court." *Id.* at 684. "A practice is unfair 'when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers.'" *Id.* (quoting *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981)). "A practice is deceptive 'if it has the tendency to deceive.'" *Id.* (quoting *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (N.C. 2000)).

Plaintiffs cannot establish that the late fee was a violation of the NCDPA. It cannot be unfair or deceptive to charge a late fee where a March 2018 payment was undeniably not completed because Plaintiffs never authorized the date for Freedom to collect their payment. Regardless of whether Plaintiffs thought they completed the payment, Freedom made ample efforts to ensure Plaintiffs were aware they had not completed the payment. Plaintiffs also clearly had notice that late fees could be charged. Freedom simply sought to collect a late fee to which it was lawfully entitled, an exclusion to unconscionability that is explicitly noted in the statute. Summary judgment is appropriate as to Plaintiff's NCDCA claim.

### c. North Carolina's Unfair and Deceptive Trade Practices Act

In North Carolina, "unfair or deceptive acts or practices in or affecting commerce" are unlawful. N.C. Gen. Stat. § 75-1.1(a). However, the NCDCA supplants the NCUDTPA "in the debt collection context." *Waddell*, 395 F. Supp. 3d at 685; N.C. Gen. Stat. § 75-56(a). Plaintiffs' NCUDTPA claim relates to Freedom's alleged rejection of Plaintiffs' mortgage payment, failure to draft Plaintiffs' mortgage payment, failure to make certain Plaintiffs knew their payment had not been accepted, failure to ensure Plaintiffs knew of its policy to require payments between 11:00

PM and 12:00 AM to be post-dated, charge of a late fee, and publication of Plaintiffs' delinquent mortgage payment. Therefore, it should fail because the general NCUDTPA claim is supplanted by the NCDCA.

Even if Plaintiffs' NCUDTPA claim was not supplanted by the NCDCA, it would still fail for similar reasons as those already stated herein. By failing to post-date their payment when they attempted it between 11:00 PM and 12:00 AM, Plaintiffs explicitly did *not* authorize Freedom to draft their payment on the proper date, thus, the payment was never properly completed. This Court has found no caselaw suggesting that Freedom's policy to require consumers to post-date their payments between 11:00 PM and 12:00 AM is unfair or deceptive. Freedom has also attested to the practical business purpose of this practice. Moreover, Freedom provided ample opportunity for Plaintiffs to cure their defective payment *before* it was reported as delinquent. Further still, Plaintiffs were on notice that Freedom could charge late fees and report delinquent payments to CRAs. Defendants are entitled to summary judgment on Plaintiffs' NCUDTPA claim.

### d. Plaintiffs' Cross-Motion for Summary Judgment

At the conclusion of their Response, Plaintiffs purportedly raise a Cross-Motion for Summary Judgment. However, this motion is untimely because the motions deadline was January 14, 2021. Therefore, Plaintiffs' Cross-Motion for Summary Judgment should be **DENIED**.

### IV. ORDER

For the reasons stated herein, **IT IS THEREFORE ORDERED**:

1. Defendant Freedom Mortgage Corporation's Motion for Summary Judgment (ECF Doc. 28) is **GRANTED**;
2. Plaintiffs' Cross-Motion for Summary Judgment (ECF Doc. 30) is **DENIED**.

**SO ORDERED**.

Signed: March 8, 2021

Graham C. Mullen
United States District Judge